OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



March 21, 2000

Mr. William H. Kuntz, Jr.  Opinion No. JC-0201
Executive Director
Texas Department of Licensing and Regulation  Re: Whether the Department of Licensing and
920 Colorado  Regulation may require applicants for a boxing
Austin, Texas 78701  license to submit to HIV testing as a condition
  of licensure  (RQ-0137-JC)

Dear Mr. Kuntz:

You have requested our opinion as to whether the Department of Licensing and Regulation may require applicants for a boxing license to submit to testing for the Human Immunodeficiency Virus (HIV) as a condition of licensure. For the reasons indicated below, we conclude that it may not.

The Commissioner of the Department of Licensing and Regulation is authorized to "adopt rules . . . establishing reasonable qualifications for an applicant seeking a license from the department." TEX. OCC. CODE ANN. § 2052.052(b)(2) (Vernon 2000). A person may not act as a professional boxer unless he or she holds a license under chapter 2052 of the Occupations Code. *See id.* § 2052.107(a). The Commissioner "may deny an application for a license if . . . the applicant does not meet the qualifications for the license." *Id.* § 2052.111. The Commissioner is considering the adoption of a rule that would require contestants in a boxing event to submit to HIV testing prior to licensure and that would disqualify the participant if he or she tests positive for HIV or HIV antibodies. *See* Letter from William H. Kuntz, Jr., Executive Director, Texas Department of Licensing and Regulation, to Honorable John Cornyn, Texas Attorney General (Nov. 1, 1999) (on file with Opinion Committee) [hereinafter "Request Letter"].

Section 81.102 of the Health and Safety Code provides, in relevant part:

> (a) A person may not require another person to undergo a medical procedure or test designed to determine or help determine if a person has AIDS or HIV infection, antibodies to HIV, or infection with any other probable causative agent of AIDS unless:
>
> > (1) the medical procedure or test is required under Subsection (d), under Section 81.050, or under Article 21.31, Code of Criminal Procedure;

(2) the medical procedure or test is required under Section 81.090,and no objection has been made under Section 81.090(*l*);

(3) the medical procedure or test is authorized under Article 21.21-4, Insurance Code;

(4) a medical procedure is to be performed on the person that could expose health care personnel to AIDS or HIV infection, according to board guidelines defining the conditions that constitute possible exposure to AIDS or HIV infection, and there is sufficient time to receive the test result before the procedure is conducted; or

(5) *the medical procedure or test is necessary:*

(A) *as a bona fide occupational qualification and there is not a less discriminatory means of satisfying the occupational qualification;*

(B) to screen blood, blood products, body fluids, organs, or tissues to determine suitability for donation;

(C) in relation to a particular person under this chapter;

(D) to manage accidental exposure to blood or other body fluids, but only if the test is conducted under written infectious disease control protocols adopted by the health care agency or facility;

(E) to test residents and clients of residential facilities of the Texas Department of Mental Health and Mental Retardation, but only if:

(i) the test result would change the medical or social management of the person tested or others who associated with that person; and

(ii) the test is conducted in accordance with guidelines adopted by the residential facility or the Texas Department of Mental Health and Mental Retardation and approved by the department; or

(F) to test residents and clients of residential facilities of the Texas Youth Commission, but only if:

(i) the test result would change the medical or social management of the person tested or others who associate with that person; and

>          (ii) the test is conducted in accordance with guidelines
> adopted by the Texas Youth Commission.
>
> *(b) An employer who alleges that a test is necessary as a bona
> fide occupational qualification has the burden of proving that
> allegation.*

TEX. HEALTH & SAFETY CODE ANN. § 81.102(a), (b) (Vernon Supp. 2000) (emphasis added).

The Department of Licensing and Regulation (the "Department") is a "person" for purposes of section 81.102. In *Texas Dep't of Health v. Doe*, 994 S.W.2d 890 (Tex. App.–Austin 1999, pet. withdrawn ), the court held that the use of "person" in the Health and Safety Code embraces the definition of "person" in the Code Construction Act, which includes, inter alia, any "government or governmental subdivision or agency." *Id.* at 893 (quoting section 311.005(2) of the Government Code). Likewise, the use of the word "require" in section 81.102 does not depend upon whether an applicant has a constitutionally protected interest in participating in a boxing contest. Rather, "require" here means "to demand of (one) to do something." XIII OXFORD ENGLISH DICTIONARY 681 (2d ed. 1989). If the Department compels an applicant to submit to HIV testing as a condition of licensure, it is perforce "requiring" that he or she do so.

You specifically ask whether the requirement for HIV testing may be justified as a "bona fide occupational qualification." You acknowledge that the Department is not an "employer" of boxers. Request Letter, *supra*, at 3-4. In our opinion, since the Department is not an employer of boxers, it may not avail itself of this exception. Section 81.102(b) indicates that "[a]n *employer* [who wishes to invoke the exception] has the burden of proving that allegation." TEX. HEALTH & SAFETY CODE ANN. § 81.102(b) (Vernon Supp. 2000) (emphasis added). We believe this indicates the legislature's intent that an "employer" is the only party authorized to raise a "bona fide occupational qualification" exception to the general prohibition of section 81.102. *See id.*

Furthermore, it is our view that, had the legislature intended to permit the Department to impose the requirement of HIV testing, it would have done so explicitly. Another provision of section 81.102, for example, permits the Department of Mental Health and Mental Retardation and the Texas Youth Commission "to test residents and clients" of their respective facilities, but only in accordance with strict statutory guidelines. *Id.* § 81.102(a)(5)(E), (F). Still other exceptions to the prohibition of HIV testing apply to persons indicted for certain criminal offenses as authorized by article 21.31 of the Code of Criminal Procedure, *see id.* § 81.102(a)(1); as part of serologic testing during pregnancy, as authorized by section 81.090 of the Health and Safety Code, *see id.* § 81.102(a)(2); and to certain individuals seeking health insurance, as authorized by article 21.21-4 of the Insurance Code, *see id.* § 81.102(a)(3). In addition, HIV test results are made confidential by section 81.103 of the Health and Safety Code, and their release is permitted only to specifically named persons. Disclosure of test results in violation of this section is a Class A misdemeanor. *See id.* § 81.103(j) (Vernon 1992). Finally, one who discloses that information is liable to the victim for civil damages and is subject to a civil penalty of up to $10,000. *See id.* § 81.104 (Vernon Supp. 2000). We believe it is clear, from the express language of section 81.102, from the confidentiality accorded to HIV test results by section 81.103, and from the civil and criminal penalties attached to unauthorized release of HIV test results by sections 81.103 and 81.104, that the legislature has manifested expressly its intent that compelled HIV testing be permitted in limited circumstances and

subject to numerous safeguards designed to protect both the public and the individual person. The legislature has not authorized by express provision the Department to require HIV testing of applicants for boxing licenses. In such a cautionary atmosphere as that created by chapter 81 of the Health and Safety Code, we do not believe it proper to infer its authority to do so. In our opinion, absent clear legislative authorization, an agency may not be permitted, by rule, to compel an individual to submit to testing for HIV or HIV antibodies.

You also ask whether, in the event a boxer's license is suspended in another state solely on the basis of a positive HIV test, the Department may uphold that suspension. Section 6306 of the Federal Professional Boxing Safety Act of 1996, requires "[e]ach boxing commission," defined as "an entity authorized under State law to regulate professional boxing matches," 15 U.S.C. § 6301(2)(A) (Supp. II 1996), to establish procedures, including "[p]rocedures to ensure that, except as provided in subsection (b) of this section, no boxer is permitted to box while under suspension from any boxing commission due to," inter alia, "an injury, requirement for a medical procedure, or physician denial of certification." *Id.* § 6306(a)(2)(B). It is well established that, under the Supremacy Clause of the United States Constitution, "[s]tates and their officers are bound by obligations imposed by the Constitution and federal statutes that comport with the constitutional design." *Alden v. Maine*, 119 S. Ct. 2240, 2266 (1999). If a positive HIV test results in denial of physician certification, and that denial in turn forms the basis for a suspension in another state, the Department is required to uphold that suspension.

## S U M M A R Y

The Department of Licensing and Regulation may not by rule require that applicants for a professional boxing license submit to HIV testing as a condition of licensure. If, however, a boxer's license is suspended in another state solely on the basis of a denial of physician certification resulting from a positive HIV test, the Department is required by federal law to uphold that suspension.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General - Opinion Committee